**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MABEL FLOOD, *as Parent/Guardian of T.F.*, Plaintiff, v. DISTRICT OF COLUMBIA, Defendant. | Civil Action No. 15-497 (BAH) Judge Beryl A. Howell |

## MEMORANDUM OPINION

After prevailing in an administrative due process hearing on her claim under the Individuals with Disabilities in Education Act and Individuals with Disabilities in Education Improvement Act (collectively, the "IDEA"), 20 U.S.C. §§ 1400, *et seq.*, the plaintiff, Mabel Flood, who is suing on behalf of herself and her minor child, seeks reimbursement of attorneys' fees and costs she incurred in pursuing her successful claim. Compl. Decl. Judgment & Relief ("Compl."), ECF No. 1. The plaintiff's request was referred to a Magistrate Judge, *See* Order Referring Case to Magistrate Judge, ECF No. 3, who issued a Report and Recommendation ("R&R") recommending reimbursement at a rate equivalent to three-quarters of the hourly rate requested by the plaintiff. ECF No. 15.

The plaintiff timely objected to this recommendation on the ground that the Magistrate Judge erred in recommending reimbursement at a rate that does not reflect the prevailing market rate in the District of Columbia for the services she received in connection with her successful administrative action. Pl.'s Obj. Mag. Judge's R&R ("Pl.'s Obj."), ECF No. 16. Pending before the Court are the parties' cross-motions for summary judgment, Pl.'s Mot. Summ. J. ("Pl.'s

Mot"), ECF No. 9; Def.'s Opp'n Pl.'s Mot. Summ. J. & Cross-Mot. Summ. J. ("Def.'s Opp'n"), ECF No. 11, under the IDEA attorneys' fees provision, 20 U.S.C. § 1415(i)(3)(B)(i)(I).  For the reasons set forth below, the plaintiff's objection is sustained, and each party's motion is granted in part and denied in part.

## I.      BACKGROUND

The plaintiff is the mother of T.F., a District of Columbia Public School ("DCPS") student who was diagnosed at an early age with various psychological and behavioral issues, including Attention Deficit-Hyperactivity Disorder and Bipolar Disorder.  Compl., Ex. 1 ("Hearing Officer Determination" or "HOD") at 2–7, ECF No. 1-4.  Throughout his elementary education, T.F. experienced serious emotional and behavioral difficulties that have substantially impaired his academic progress.  *Id.*  Due to these difficulties, T.F. attended at least three different elementary schools over a period of five years, during which time his frequent outbursts escalated from simple classroom disruptions to threats of physical violence and at least one incident in which T.F. assaulted another student.  *Id.*

Despite the plaintiff's repeated requests over the course of more than two years, DCPS consistently declined to conduct a comprehensive assessment of T.F.'s abilities and needs, as well as his potential eligibility for special education services under the IDEA.  *Id.*  Set out below is a summary of the plaintiff's successful effort to obtain such an assessment by means of an administrative due process proceeding, followed by the relevant procedural history underlying the present dispute.

A.      The Underlying Merits Action

T.F. began experiencing serious behavioral and emotional difficulties soon after enrolling in elementary school.  He was held back in Kindergarten, and continued to have difficulties during his first- and second-grade years.  *Id.* at 3.  By the end of second grade, T.F. demonstrated "pervasive sadness, anger, irritability, paranoia, detachment, temper tantrums, arguing with adults, defying adult requests and rules, blaming others, and deliberately annoying people."  *Id.* Unfortunately, after a move to a new school for the 2011–2012 school year, T.F.'s troubling behavior persisted.  Consequently, at some point during his third-grade year, school staff informed the plaintiff that T.F. would be asked to leave his new school if he did not receive medication to treat his emotional and behavioral issues.  *Id.* at 3.  In response, the plaintiff asked school officials to conduct a complete evaluation to assess T.F.'s emotional challenges and educational needs.  *Id.*  School officials apparently declined to conduct such an evaluation.  *See id.* at 2, 9.

Thereafter, when T.F. began attending a third school during the 2012-2013 school year, the plaintiff alerted school administrators of T.F.'s behavioral issues and indicated to a school counselor that T.F. required a full evaluation to determine the extent of his educational and emotional challenges.  *Id.* at 4.  While this second request for evaluation prompted the school counselor to work with the plaintiff to address T.F.'s attendance issues, *id.*, school officials again declined to conduct a more comprehensive evaluation of T.F.'s abilities and needs, *see id.* at 2, 9. The next school year, in September 2013, T.F.'s behavior continued to impede his academic progress, prompting the plaintiff for the third time to approach school officials to obtain an evaluation of T.F.  *Id.* at 4–5.  In response, a school counselor advised the plaintiff that, because

T.F.'s problems were primarily behavioral, T.F. was ineligible for an Individualized Education Program ("IEP") and associated special education services under the IDEA. *Id.* at 5. As a result, in December 2013, instead of conducting a full evaluation of T.F.'s needs, school staff developed a more limited plan to address T.F.'s disruptive classroom behavior. *Id.* at 5–6.

This newly developed plan notwithstanding, T.F. continued to demonstrate significant behavioral issues during the 2013–2014 school year. *Id.* at 6. Due to T.F.'s disruptive and aggressive behavior—including an incident in which T.F. assaulted another student—T.F. was suspended for more than ten days in the spring of 2014. *Id.* At some point during this period, both the plaintiff and an outside mental health worker again, for the fourth time, asked school staff to evaluate T.F. more thoroughly to determine how best to address his mounting academic and behavioral issues. *Id.* Again, however, school staff declined to conduct any such evaluation. *See id.* at 2, 9.

With DCPS continuing to refuse to evaluate T.F., the plaintiff filed an IDEA administrative due process complaint on August 6, 2014. *Id.* at 1. Alleging that DCPS violated the IDEA by failing to respond to her repeated requests for a full evaluation of T.F., the plaintiff sought an order requiring DCPS to evaluate T.F.'s educational needs and potential eligibility for special education services under the IDEA. *Id.* at 2. Following a prehearing conference on August 21, 2014, the administrative Hearing Officer convened a hearing on September 5, 2014, during which the parties submitted a total of twenty-five exhibits and presented testimony from both the plaintiff and a school counselor from T.F.'s then-current elementary school. *Id.* at 1–2.

On September 19, 2014, the Hearing Officer issued an HOD concluding that the plaintiff's request for a comprehensive evaluation of T.F. was reasonable. *Id.* at 14. Given

DCPS's extended failure to address T.F.'s behavioral issues, the Hearing Officer granted the plaintiff's request to require DCPS to fund an independent assessment of T.F.'s educational abilities and needs. *Id.* at 14–15. Within ten days of the completion of these assessments, the HOD directed DCPS to determine T.F.'s eligibility under the IDEA for special education services. *Id.* at 15.

## B.     The Attorneys' Fees Report and Recommendation

Following the resolution of her administrative due process claim, the plaintiff filed the instant action on April 6, 2015. *See* Compl. As a prevailing party in her effort to obtain an evaluation of her child's eligibility for special education services, the plaintiff seeks reimbursement of the attorneys' fees and costs she incurred in litigating her successful administrative due process claim. *Id.* at 4–5. Specifically, the plaintiff seeks reimbursement for a total of 68.8 hours her attorney billed in connection with her administrative proceeding, to be reimbursed at the rate provided for her attorney under the familiar *Laffey* Matrix maintained by the U.S. Attorney's Office for the District of Columbia ("USAO *Laffey* Matrix"). *Id.*[1] Under this matrix, an attorney, like the plaintiff's attorney, with between eleven and nineteen years of experience is entitled to an hourly rate of $460. *Id.* In addition to these requested fees, the plaintiff seeks reimbursement of $710 in associated litigation costs, resulting in a total requested award of $32,358. *Id.*, Ex. 2 ("Application for Payment of Attorney Fees and Costs Pursuant to

---

[1]     Established in *Laffey v. Nw. Airlines, Inc.,* 572 F. Supp. 354, 371 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds*, 746 F. 2d 4 (D.C. Cir. 1984), the *Laffey* Matrix recommends a presumptive maximum hourly rate for attorneys engaged in "complex federal litigation," *id.* at 372. In the years since it was initially proposed, the *Laffey* Matrix has spawned two versions: (1) a version maintained by the U.S. Attorney's Office for the District of Columbia, which is linked to inflation, as measured by the Consumer Price Index for all items in the Washington, DC area; and (2) an "enhanced" version, first approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), which is adjusted for inflation using the more rapidly rising Legal Services Index of the nationwide Consumer Price Index ("*Salazar*/LSI Matrix"). *See Jones v. District of Columbia*, No. 15-CV-155 (BAH), 2015 WL 9907797, at *1, n.1 (D.D.C. Oct. 29, 2015). The plaintiff's requested rate derives from the USAO *Laffey* Matrix.

the Individuals with Disabilities Act").  The District argues that the plaintiff's requested

reimbursement rate for her attorney's time is unreasonably high, and proposes instead a rate

equivalent to three-quarters of the plaintiff's attorney's full *Laffey* rate, which equates to $345

per hour.  Def.'s Opp'n at 10–13.

      Following referral of the plaintiff's fee request to a Magistrate Judge for full case

management, *see* Order Referring Case to Magistrate Judge, ECF No. 3, the parties cross-moved

for summary judgment, *see* Pl.'s Mot.; Def.'s Opp'n.  The Magistrate Judge subsequently issued

an R&R recommending that the plaintiff's motion for summary judgment be granted in part and

denied in part.  *See* R&R at 2.[2]  Finding that the plaintiff qualifies as a "prevailing party" for

purposes of the IDEA fee-shifting provision, *id.* at 5, the R&R recommends reimbursement at

the reduced hourly rate proposed by the District, *id.* at 12.  Finally, the R&R recommends that

the plaintiff be reimbursed at half of this hourly rate for three hours of travel time billed by her

attorney.  *Id.* at 12–13.  As a result of these reductions, the R&R recommends a total award of

$24,273.50, representing a roughly 25 percent reduction below the plaintiff's initial request.  *Id.*

at 13.

      The plaintiff timely objected to the R&R on grounds that the Magistrate Judge erred in

recommending a fee award based on the reduced reimbursement rate proposed by the District,

and that she is instead entitled to reimbursement at her attorney's full *Laffey* rate.  *See* LCvR

72.3(b).  The plaintiff's objection has been fully briefed and is now ripe for consideration.

---

[2]      The R&R did not include a recommended disposition of the District's cross-motion for summary judgment.
*See generally* R&R.  Given the recommendation regarding the plaintiff's motion, however, the Magistrate Judge
appears to recommend granting the District's cross-motion in its entirety.

## II.     LEGAL STANDARD

The IDEA provides that "the court, in its discretion may award reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). This statutory language makes plain that a prevailing party in an IDEA action may seek the award of attorneys' fees that are "reasonable." *Id.* The D.C. Circuit has developed a "three-part" analysis for assessing whether a requested fee award is reasonable under federal statutes authorizing fee-shifting. *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015). "First, the court must determine the number of hours reasonably expended in litigation. Second, it must set the reasonable hourly rate. Finally, it must determine whether use of a multiplier is warranted." *Id.* (internal citations and quotations omitted).[3] With regard to the proposed hourly rate, the Court considers three sub-elements: "(1) 'the attorney['s] billing practices,' (2) 'the attorney['s] skills, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Id.* (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).

"The 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.'" *Eley*, 793 F.3d at 100 (quoting *Covington*, 57 F.3d at 1107–08). Once an applicant meets this initial burden, a presumption applies that the number of hours billed and the hourly rates are reasonable. *Covington*, 57 F.3d at 1110–11; *see also Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010)). At that point, the burden shifts to the opposing party to "provide specific

---

[3]       Since the IDEA prohibits application of any bonus or multiplier, *Eley*, 793 F.3d at 100 (citing 20 U.S.C. § 1415(i)(3)(C)), only the first and second elements of this analysis are considered in the discussion that follows.

7

contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

While the IDEA authorizes the court to award reasonable attorneys' fees "in its discretion," 20 U.S.C. § 1415(i)(3)(B)(i), the D.C. Circuit has observed, "notwithstanding the apparently permissive language of the statute, the Supreme Court has interpreted similar language in other fee-shifting contexts to mean that the prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Price v. District of Columbia*, 792 F.3d 112, 114–15 (D.C. Cir. 2015) (citing authorities).  A district court's award of attorneys' fees is reviewed for an abuse of discretion.  *Eley*, 793 F.3d at 103 (citing *King v. Palmer*, 950 F.2d 771, 785 (D.C. Cir. 1991) (en banc)), and the D.C. Circuit will not upset such an award "'absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence,'" *id*. (quoting *Kattan ex rel. Thomas v. District. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)).

## III.   DISCUSSION

At the outset, three elements of the recommended fee award proposed in the R&R are not in dispute: (1) that the plaintiff qualifies as a "prevailing party" within the meaning of the IDEA fee-shifting provision and is therefore entitled to reimbursement of attorneys' fees; (2) that the plaintiff's attorney reasonably billed 68.8 hours in connection with the plaintiff's successful administrative action; and (3) that three hours of travel time billed by the plaintiff's attorney should be reimbursed at half the rate otherwise deemed reasonable in calculating the plaintiff's final fee award.  *See generally* Pl.'s Obj.

8

With the plaintiff therefore objecting only to the reimbursement rate recommended in the R&R, the Court is confronted again with a dispute now familiar in this jurisdiction: namely, how best to identify the appropriate rate at which successful IDEA claimants should be reimbursed for the attorneys' fees incurred to vindicate the rights of their children to a free and appropriate public education. As is often the case in such disputes, the plaintiff requests reimbursement at the full USAO *Laffey* rate commensurate with her attorney's nearly two decades of practice experience. Compl. at 1. In support, the plaintiff points to evidence of her attorney's billing practices and experience, as well as evidence offered to demonstrate that her requested reimbursement rate "reflects the customary fee for similarly complex work and the experience, reputation, and ability of [her] attorney." Pl.'s Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 4–5, ECF No. 9. In response, the District contends that the plaintiff's proposed rate is unreasonably high and proposes instead reimbursement at a rate equivalent to three-quarters of the plaintiff's requested rate. Def.'s Opp'n at 6–13. The District contends that full *Laffey* rates are unwarranted here because IDEA administrative proceedings do not qualify as "complex federal litigation," and points to various decisions in this Court in which prevailing IDEA claimants received reimbursement at three-quarters of the otherwise applicable *Laffey* rate in "non-complex" IDEA cases. Def.'s Resp. Pl.'s Objs. Mag. Judge's R&R ("Def.'s Resp.") at 3–4, ECF No. 17.

Declining the plaintiff's request for reimbursement at her attorney's full *Laffey* rate, the Magistrate Judge concluded that the evidence offered by the plaintiff "does not satisfactorily establish that USAO or enhanced *Laffey* rates are an appropriate market rate for IDEA litigation." R&R at 8. Specifically, the Magistrate Judge found unconvincing the plaintiff's

9

evidence of the prevailing rate at which practitioners in the District of Columbia charge clients for services in connection with IDEA administrative proceedings. *Id.* at 8–9. Instead, the R&R concludes that the plaintiff failed to demonstrate that her underlying IDEA action was particularly complex and, as a result, recommends reimbursement at the reduced rate proposed by the District. *Id.* at 10–12. Objecting to this recommendation, the plaintiff argues that the District has failed to refute record evidence that her proposed rate reflects the prevailing market rate for similarly experienced attorneys engaged in IDEA litigation in the District of Columbia, Pl.'s Obj. at 1–2, and that the reduction below this prevailing rate recommended by the Magistrate Judge is inconsistent with this Court's precedent, *id.* at 3.

Following a summary of recent binding precedent addressing the determination of the appropriate rate at which successful IDEA claimants should be reimbursed for their attorneys' efforts, the plaintiff's objection is examined below.

**A.  Successful IDEA Fee Applicants Must Demonstrate that Requested Rates are in Line with Prevailing Market Rates for Similar Services**

The D.C. Circuit recently considered the appropriate reimbursement rate for successful IDEA claimants in *Eley v. District of Columbia.* 793 F.3d at 97. In that case, the fee applicant sought, and was awarded, reimbursement based on the *Salazar/*LSI Matrix for attorneys' fees incurred in prevailing in an IDEA administrative action. *Id.* at 102.[4] The D.C. Circuit vacated this final award and, in so doing, clarified the evidentiary burden prevailing parties bear in

---

[4]      As previously noted, *supra* n.1, the *Salazar/*LSI Matrix generally provides for higher hourly rates than the USAO *Laffey* Matrix. As here, the District argued that successful IDEA claimants are entitled to reimbursement at rates no more than three-quarters of the hourly rates provided by the USAO *Laffey* Matrix. *Eley v. District of Columbia,* 999 F. Supp. 2d 137, 159 (D.D.C. 2013).

seeking reimbursement for reasonably incurred attorneys' fees under federal fee-shifting statutes. *Id.* at 105.

In support of her requested rate, the plaintiff in *Eley* presented the following evidence: (1) a declaration from her attorney describing his experience litigating IDEA cases, for which he averred he routinely charged paying clients at rates comparable to those requested by the plaintiff; and (2) a declaration from the economist who developed the *Salazar*/LSI Matrix, who identified four decisions between 1995 and 2011 where this Court and another federal court used that matrix to calculate reasonable fee awards. *Id.* at 104; *see also Eley v. District of Columbia*, 999 F. Supp. 2d 137, 150, 156 (D.D.C. 2013). Reviewing this evidence, the *Eley* Court noted that fee matrices serve as a "'useful starting point' in calculating the prevailing market rate" in a particular jurisdiction, *Eley*, 793 F.3d at 100 (quoting *Covington*, 57 F.3d at 1109), but emphasized that a fee applicant bears the burden of demonstrating that any proposed reimbursement rate is "in line with those prevailing in the community for *similar services*," *id.* at 104 (emphasis added) (internal quotations omitted) (quoting *Covington*, 57 F.3d at 1109). Specifically, the Court stressed that a fee applicant must "'produce satisfactory evidence—*in addition* to her attorney's own affidavits—that her requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* (emphasis in original) (alteration omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Beyond a fee matrix, such evidence may include, *inter alia*, "'surveys to update [the matrix]; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of

recent fees awarded by courts or through settlement to attorneys with comparable qualifications handling similar cases.'" *Id.* at 101 (quoting *Covington*, 57 F.3d at 1109).

Under this standard, the D.C. Circuit held that the plaintiff failed to provide sufficient evidence to demonstrate that her requested rates were in line with those charged by attorneys litigating IDEA cases in the District of Columbia. *Id.* at 104. In particular, though the plaintiff offered evidence of four prior cases in which Judges in this District and another federal district court granted fee awards based on rates supplied by *Salazar*/LSI Matrix, the Circuit noted that none of these prior fee awards arose from an IDEA proceeding. *Id.* at 103. By contrast, the Circuit observed that the District identified more than forty IDEA cases in this jurisdiction in which prevailing plaintiffs were reimbursed at hourly rates below those supplied by the *Salazar*/LSI Matrix. *Id.* at 104. Thus, the *Eley* Court concluded that the plaintiff had not met her burden of justifying the reasonableness of her requested reimbursement rates. *Id.* Nonetheless, while holding that the plaintiff in that case did not meet this evidentiary burden, the *Eley* Court expressly declined to decide whether, as a matter of law, successful IDEA claimants may receive reimbursement at rates provided under either *Laffey*-derived matrix. *Id.* at 105. In a brief concurrence, however, one Judge on the *Eley* panel expressed his view that the USAO *Laffey* Matrix "is appropriate for IDEA cases." *Id.* (Kavanaugh, J., concurring).

This brief concurrence aside, *Eley* confirms that parties seeking reimbursement under federal fee-shifting statutes must demonstrate that any requested reimbursement rate is in line with the prevailing market rate in the District of Columbia for services similar to those for which they seek reimbursement. To meet this burden, successful IDEA claimants must produce sufficient evidence, beyond their own attorneys' affidavits, to show that their requested rates are

a fair approximation of the prevailing rate for the services they received in connection with their successful claim, which evidence may include evidence of other recent IDEA fee awards, as well as direct evidence of rates charged by similarly situated IDEA attorneys in the District of Columbia.

### B.    Putting *Eley* into Practice

As described above, under *Eley*, an IDEA fee applicant seeking reimbursement at *Laffey* rates must demonstrate that these requested rates are in line with those charged for similar services in this jurisdiction.  While the D.C. Circuit has yet to delineate the precise contours of this evidentiary burden, the Court's analysis in *Eley* provides certain guideposts to assist review of record evidence submitted by the parties in this case.  With this in mind, before turning to the evidence offered by the plaintiff in support of the instant fee application, two of these general guides are considered.

### 1.    *Reasonable Reimbursement Rates Must be Determined Without Regard to the Relative Complexity of a Particular IDEA Action*

First, *Eley* counsels in favor of identifying reasonable reimbursement rates for IDEA cases *generally*, without regard to the unique features of an underlying IDEA proceeding in a particular case.  This emphasis on determining an appropriate reimbursement rate for IDEA cases as a category or type of federal litigation, as opposed to attempting to identify reasonable rates on a case-by-case basis, is most evident in the *Eley* Court's review of the evidence offered by the plaintiff in support of her requested reimbursement rate in that case.  Throughout that discussion, the D.C. Circuit emphasized the plaintiff's failure to demonstrate that IDEA cases, as a class of litigation, entail hourly rates comparable to those provided under *Laffey*.  *See*, *e.g.*, *Eley*, 793 F.3d at 104 ("Absent from her submission . . . [was] evidence that her 'requested rates

are in line with those prevailing in the community for *similar services*,' *i.e.*, IDEA litigation."
(emphasis in original) (quoting *Covington*, 57 F.3d at 1109)); *id.* at 105 ("[A]bsent is any record
evidence . . . demonstrating that IDEA litigation is as complex as the type of litigation that
supports the 'enhanced' hourly rates in the LSI *Laffey* Matrix.").  By describing IDEA cases as a
distinct submarket of legal services, to which a common set of reimbursement rates must apply,
*Eley* suggests a categorical approach to identifying reasonable reimbursement rates for prevailing
IDEA plaintiffs.  Such an approach generally minimizes consideration of the features of a
particular proceeding in an effort to assess its "complexity" in favor of more generalized
evidence regarding prevailing rates for IDEA practitioners in this jurisdiction.

     While not explicitly stated, this categorical approach is also apparent in the brief
concurrence.  In expressing his view that *Laffey* rates are "appropriate in IDEA cases," Judge
Kavanaugh implicitly suggests that common rates should apply across all IDEA proceedings,
regardless of the particular novelty or complexity presented by any individual proceeding.  *Eley*,
793 F.3d at 105 (Kavanaugh, J., concurring); *see also Price*, 792 F.3d at 116–17 (Brown, J.,
concurring) ("[Fee applicants] are entitled to the *Laffey* rate only if they can establish that the
'relevant legal market in this action,' namely representation in IDEA administrative due process
hearings, "is subject to the same hourly rates that prevail in . . . complex federal litigation."
(quoting *Laffey*, 572 F. Supp. at 374)).

     This view of IDEA cases as a category of litigation, to which common hourly fee rates
must apply, is also evident in the D.C. Circuit's subsequent decision in *Salazar ex rel. Salazar v.
District of Columbia*.  809 F.3d at 64.  There, the D.C. Circuit cast its earlier holding in *Eley* as
resting on its view of "evidence submitted by the District tending to show that, in the particular

context of IDEA claims, there is a submarket in which attorneys' hourly fees are generally lower than the rates in either of the *Laffey* Matrices." *Id.* (citing *Eley*, 793 F.3d at 105). Viewing IDEA litigation as a "submarket" of the broader Washington, D.C. legal market is another way of describing the categorical approach suggested in *Eley*. Thus, *Eley* suggests that courts seeking to identify reasonable reimbursement rates should look to evidence of the general prevailing rates of IDEA practitioners in the District of Columbia without regard to the distinctive characteristics of any individual IDEA proceeding. *Accord Reed v. District of Columbia*, No. CV 14-1887 (JEB), 2015 WL 5692871, at *5 (D.D.C. Sept. 28, 2015).

Beyond being consistent with the D.C. Circuit's analysis in *Eley*, such an approach has the added benefit of more closely aligning with recent Supreme Court precedent. Indeed, the Supreme Court has held that courts seeking to identify an appropriate fee award generally should refrain from looking to the particular features of an underlying proceeding to identify a reasonable reimbursement rate. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). Instead, the Supreme Court has emphasized that a fee award based on the prevailing market rate in the relevant jurisdiction is presumed to "include[] most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 553. In particular, "the novelty and complexity of a case generally may not be used as a ground for [a deviation from an otherwise reasonable award] because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" *Id.* By minimizing the relative complexity or novelty of a particular IDEA proceeding, which are presumed to be subsumed in the number of hours reasonably billed by the prevailing attorney, the categorical approach suggested in *Eley* reflects this recognized presumption and helps to ensure objective and predictable fee awards for

successful IDEA claimants. *See Jones v. District of Columbia*, No. 15-CV-155 (BAH), 2015 WL 9907797, at *7 (D.D.C. Oct. 29, 2015).

This recent precedent notwithstanding, fee award cases in this District have frequently drawn a distinction between "complex" IDEA cases, for which full *Laffey* rates may be available, and "non-complex" cases that generally entitle a prevailing claimant to reimbursement at a reduced rate. R&R at 11. As accurately described by the Magistrate Judge in this case, "[w]here the issues are not complex, insofar as there is no pre-hearing discovery, no lengthy argument, and few, if any, motions, many judges [in this District] have awarded reduced USAO *Laffey* Matrix rates." *Id.* In particular, prevailing IDEA claimants have been awarded reimbursement at a rate of three-quarters of the USAO *Laffey* Matrix for "non-complex" IDEA actions. *Id.* Relying on this non-binding authority, the Magistrate Judge here concluded that the plaintiff did not demonstrate that her administrative action was "particularly complex," and recommended reimbursement at three-quarters of the plaintiff's attorney's full *Laffey* rate. *Id.* at 10–12.

Distinguishing between "complex" and "non-complex" IDEA cases in identifying reasonable reimbursement rates is an approach that appears to be at odds with the D.C. Circuit's most recent precedent. Moreover, an automatic reduction in the plaintiff's requested reimbursement rate based only on the simplicity of an administrative proceeding runs counter to the Supreme Court's view that the relative complexity of a matter is generally presumed to be reflected fully in the number of hours billed. *See Perdue*, 559 U.S. at 553. Indeed, reduction of the plaintiff's reimbursement rate in this manner risks double-counting the relative simplicity of the underlying proceedings, potentially resulting in an unreasonably meagre fee award. *See Merrick v. District of Columbia*, No. CV 14-1174 (ABJ), 2015 WL 5732105, at *8 (D.D.C. Sept.

16

29, 2015) ("Since an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing the *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice."); *Devore on behalf A.M. v. District of Columbia*, 89 F. Supp. 3d 113, 118 (D.D.C. 2015) (same).

In the end, the categorical approach required by the *Eley* Court's analysis is consistent with, and buttressed by, the Supreme Court's warning that the relative complexity of a particular proceeding is reflected not in the appropriate reimbursement rate, but in the number of hours reasonably billed by the prevailing attorney.  With this in mind, the Court declines to adopt the Magistrate Judge's reasoning on this score and will not reduce the plaintiff's requested reimbursement rate based on the assessed simplicity of her successful administrative due process claim.  *Accord Reed*, 2015 WL 5692871, at *5 (finding "improper" the "case-by-case approach" employed by the Magistrate Judge in recommending differing reimbursement rates for separate IDEA actions based on the perceived complexity of the individual proceedings).  Instead, to determine whether the plaintiff's requested reimbursement rate is reasonable, the Court must consider whether the plaintiff has offered evidence that her requested rate is in line with rates generally charged by attorneys in IDEA actions in this jurisdiction.

**2.**     ***Reimbursement at Laffey Rates May Be Available Even Absent Evidence that IDEA Cases Qualify as "Complex Federal Litigation"***

*Eley* holds that IDEA fee applicants bear the burden of demonstrating that any requested reimbursement rate reflects rates customarily charged by IDEA practitioners in the District of Columbia.  Beyond recommending this general approach to identifying a reasonable reimbursement rate, however, *Eley* signals at least two alternative methods by which successful IDEA claimants may justify reimbursement at full *Laffey* rates.

17

On one hand, as previously noted, *see supra* n.1, the *Laffey* Matrix was created to provide presumptively reasonable reimbursement rates for attorneys engaged in "complex federal litigation." *Eley*, 793 F.3d at 103.  As such, *Eley* clearly holds that a prevailing party seeking reimbursement under a federal fee-shifting statute may justify reimbursement at full *Laffey* rates by demonstrating that the services for which the party seeks reimbursement qualify as "complex federal litigation."  Thus, for IDEA fee applicants in particular, reimbursement at an attorney's full *Laffey* rate is available where the applicant demonstrates "that IDEA litigation is as complex as the type of litigation" for which the *Laffey* Matrix was initially created.  *Id.* at 105.

In this vein, while the D.C. Circuit has yet to rule definitively on the matter, the case law in this District offers differing views on whether IDEA cases may be considered "complex federal litigation" to which *Laffey* rates presumptively apply.  Following *Eley*, some Judges on this Court have held that IDEA actions "are infrequently comparable to complex federal litigation, and therefore, full *Laffey* rates should not be awarded in such cases."  *Snead v. District of Columbia*, No. 1:15-CV-00376 (ESH), 2015 WL 5921901, at *3 (D.D.C. Oct. 7, 2015) (collecting cases).  For example, in *Reed v. District of Columbia*, the court considered a fee application submitted by six IDEA claimants who prevailed in separate administrative due process actions against DCPS and sought reimbursement for their attorneys' time at full USAO *Laffey* rates.  2015 WL 5692871, at *4.  In that case, the plaintiffs sought to "demonstrate that IDEA proceedings *are* 'complex federal litigation' meriting compensation at least at full primary *Laffey* rates."  *Id.*  The court disagreed, concluding instead that "IDEA proceedings are qualitatively dissimilar to most other complex federal litigation," due largely to the relatively minimal discovery or novel legal issues presented by such proceedings.  *Id.* at *6.  Instead,

relying primarily on prior fee awards in this District, the court granted reimbursement at the reduced rate suggested by the District.  *Id.* at *7.

At the same time, however, before and after *Eley*, other Judges on this Court "'have rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirmed that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix.'"  *Merrick,* 2015 WL 5732105, at *8 (internal alterations omitted) (quoting *Irving v. D.C. Public Schs.*, 815 F. Supp. 2d 119, 129 (D.D.C. 2011)).  This latter view is consistent with Judge Kavanaugh's concurrence that, in his view, prevailing IDEA claimants *should* be reimbursed at *Laffey* rates.  *Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring).

In any case, even assuming that IDEA cases do not fit comfortably among the more familiar forms of complex federal litigation to which *Laffey* rates apply, this alone does not bar reimbursement of successful IDEA claimants at rates comparable to those provided under *Laffey*. Indeed, nowhere does *Eley require* an IDEA fee applicant to demonstrate the general complexity of IDEA litigation to merit reimbursement at her attorney's full *Laffey* rate.  On the contrary, reading *Eley* to require such a demonstration ignores the possibility that, irrespective of whether IDEA proceedings qualify as "complex federal litigation," attorneys who litigate IDEA actions in this jurisdiction charge rates that are in line with those charged by their peers engaged in *bona fide* complex federal litigation.  *See Laffey*, 572 F. Supp. at 374 (granting reimbursement at the plaintiff's requested rate upon finding that the legal market for "complex employment discrimination litigation . . . *is subject to the same hourly rates* that prevail in other complex federal litigation") (emphasis added).

Indeed, the D.C. Circuit has consistently embraced this alternative method for justifying reimbursement at full *Laffey* rates. *See Eley*, 793 F.3d at 105 n.6 (noting that IDEA fee applicants "'are entitled to the Laffey rate only if they can establish that the relevant legal market in this action, namely representation in IDEA administrative due process hearings, *is subject to the same hourly rates that prevail in complex federal litigation*.'" (emphasis added) (quoting *Price* 792 F.3d at 116–17 (Brown, J., concurring))). Thus, while the *Eley* Court's holding that the plaintiff in that case failed to justify reimbursement at enhanced *Laffey* rates relied primarily on its view of the record evidence in that case, *see id.* at 101, the D.C. Circuit expressly left open the possibility that a future IDEA claimant may demonstrate that the prevailing rate for her attorney's time is consistent with those reflected in either or both *Laffey* Matrices, *id.* at 105. In particular, as relevant here, a fee applicant seeking reimbursement based on the USAO *Laffey* Matrix may support his or her request with, *inter alia*, "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Id.* at 101 (internal quotations and citation omitted). Upon offering sufficient evidence of this kind, a fee applicant need not demonstrate that IDEA cases qualify as "complex federal litigation," or are otherwise "as complex" as other categories of litigation to which *Laffey* rates presumptively apply. Instead, an applicant may justify reimbursement at *Laffey* rates based simply on *direct* evidence of fees typically collected by her attorney and other attorneys engaged in IDEA litigation in the District of Columbia. *Id.*

In sum, where IDEA fee applicants seek reimbursement of attorney's fees at a full USAO *Laffey* rate, *Eley* suggests that the applicants may meet their burden upon either of two showings. First, the applicant may demonstrate that IDEA proceedings qualify as "complex federal

litigation," to which *Laffey* rates presumptively apply.  Second, alternatively, a fee applicant may demonstrate that rates customarily charged by IDEA practitioners in the District are comparable to those provided under the USOA *Laffey* Matrix.

### C.    The Plaintiff's Unrefuted Evidence Demonstrates that Her Request for Reimbursement at Her Attorney's Full *Laffey* Rate is Reasonable

Guided by the recent precedent summarized above, the Court next considers the parties' evidentiary submissions in connection with the pending motions.  Based on the plaintiff's unrefuted evidence of the customary rates charged by IDEA practitioners in this jurisdiction, as supplemented by prior fee awards in this District that have considered similar evidence, the Court concludes that the plaintiff has met her burden of justifying her request for reimbursement at her attorney's full *Laffey* rate.

At the outset, the Court observes that the plaintiff does not argue that IDEA administrative proceedings generally qualify as "complex federal litigation" or that her own successful IDEA claim presented particular complexity or raised any novel issues of law.  *See generally* Pl.'s Mem.; Pl.'s Obj.  Instead, she argues directly that her requested rate is in line with rates generally charged by IDEA practitioners in this jurisdiction.  As support, the plaintiff points to evidence of the fees typically charged and collected by special education attorneys in the District of Columbia.

Specifically, the plaintiff points to the following evidence: (1) a declaration from her attorney, describing her extensive experience in the field of special education law, including the successful litigation of more than 1,600 IDEA administrative due process complaints, and her practice of "match[ing]" her hourly billing rate to the rate applicable to an attorney of her experience provided by the USAO *Laffey* Matrix, Decl. Carolyn Houck, Esq. ("Houck Decl."),

ECF No. 9-8; (2) two declarations from attorneys who practice together at a law firm in Washington, DC focusing on special education matters and aver that their firm recently increased its hourly rates from those provided by the USAO *Laffey* Matrix to those provided *Salazar*/LSI Matrix, which rates are regularly paid by clients who retain the firm on a non-contingency basis, Decl. Stevie Nabors, Esq. ("Nabors Decl."), ECF No. 9-9; Decl. Charles A. Moran, Esq. ("Moran Decl."), ECF No. 9-10; (3) a declaration from a special education attorney whose practice in Washington, D.C. focuses on serving indigent clients and who asserts that she previously charged paying clients at USAO *Laffey* rates and has received such rates from various Judges in this jurisdiction, Decl. Alana M. Hecht, Esq. ("Hecht Decl."), ECF No. 9-11; and (4) two additional declarations from experienced special education attorneys, each of whom attests to billing clients in IDEA actions at rates comparable to the rates provided for attorneys of comparable experience by the USAO *Laffey* Matrix, Decl. Elizabeth T. Jester, Esq. ("Jester Decl."), ECF No. 12-1; Decl. Pierre Bergerson, Esq. ("Bergeron Decl."), ECF No. 12-2.

In addition to this direct evidence of rates charged and collected by IDEA practitioners in the District of Columbia, the plaintiff argues that at least six Judges on this Court have approved fee awards in "various and similar matters" before this Court providing for reimbursement at full *Laffey* rates, Pl.'s Mem. at 5, and offers evidence summarizing requested reimbursement rates for prevailing attorneys in roughly three dozen recent IDEA actions in this jurisdiction, Pl.'s Reply Def.'s Cross-Mot. & Opp'n Pl.'s Mot. Summ. J., Ex. 3 ("Plaintiff's Table of Cases Cited by Defendant"), ECF No. 12-3.

In response, the District renews its well-worn argument that *Laffey* rates generally exceed the prevailing market rate for attorneys engaged in administrative IDEA actions and proposes

22

instead reimbursement at a reduced rate in order to reflect these actions' "unique nature and . . . reasonable market rates." Def.'s Resp. at 4–5.  According to the District, because administrative IDEA proceedings often lack certain features commonly associated with litigation in federal court, the "relevant legal market" in determining the prevailing the rate for IDEA actions "is that of administrative proceedings rather than complex federal litigation." *Id.* at 3–4.  Thus, according to the District, *Laffey* rates "never should have been applied to IDEA administrative proceedings[, and its] past application is wrong as a matter of law, does not bind the Court, and has artificially inflated the rates charged [by attorneys representing IDEA claimants]." *Id.* at 2 (citing *Price*, 792 F.3d at 116–18) (Brown, J., concurring)).  Acknowledging the split among Judges on this Court regarding the appropriate reimbursement rate in IDEA actions, the District suggests that the weight of authority supports reimbursement at its preferred, reduced rate. *Id.* at 4–7 & n.3 (collecting cases).

Under *Eley*, the Court must first determine whether the plaintiff has met her burden of demonstrating that her requested reimbursement rate is in line with the prevailing market rate for IDEA practitioners in the District of Columbia.  With that in mind, the Court first considers the evidence submitted by the plaintiff in support of her request for reimbursement at her attorney's full *Laffey* rate before then considering the District's argument that the plaintiff is entitled to reimbursement at no more than three-quarters of this requested rate.

### 1. *The Plaintiff Has Met Her Initial Burden of Demonstrating that Her Requested Rate is Reasonable*

In addition to her own attorney's affidavit attesting to her own billing practices at the full USAO *Laffey* rate, the plaintiff relies on two categories of evidence to demonstrate that her requested reimbursement rate is in line with prevailing rates charged by similarly experienced

IDEA attorneys in the District of Columbia: (1) declarations from IDEA practitioners attesting to their experience in litigating special education matters in this jurisdiction and their billing practices and customary rates in connection with this work; and (2) recent fee awards in this District approving reimbursement for successful IDEA claimants at their attorneys' full *Laffey* rates. Each of these categories of evidence is examined in turn.

First, the plaintiff offers six affidavits from IDEA practitioners (including the plaintiff's own attorney) attesting to their customary billing practices and hourly rates. Taken together, these declarations indicate that attorneys specializing in special education generally charge rates corresponding to the rate they would be eligible to receive under either the USAO *Laffey* Matrix or the *Salazar*/LSI Matrix. *See* Nabors Decl. ¶¶ 6–7 (explaining that the declarant's firm previously set rates according to the USAO *Laffey* Matrix and has, since January 1, 2014, aligned its rates with the *Salazar*/LSI Matrix); Moran Decl. ¶¶ 7–8 (same); Hecht Decl. ¶ 6 (stating that the attorney charged fee-paying clients at her USAO *Laffey* rate); Jester Decl. ¶¶ 11–12; Bergeron Decl. ¶¶ 8–9. These declarations further indicate that these declarants' hourly rates are broadly consistent with those charged by comparably experienced special education attorneys who practice in the District of Columbia. *See*, *e.g.*, Jester Decl. ¶ 10 (explaining that the declarant's hourly rates "are well within the range of prevailing rates in the District of Columbia market for legal services in special education cases and related matters based on [the declarant's] knowledge of what other attorneys bill in the D.C. metropolitan area"). According to the plaintiff, these declarations offer the "best evidence of the prevailing market rate" and "clearly establish that litigators in the District's IDEA community charges between USAO and LSI *Laffey* rates and that they regularly seek them in this Court." Pl.'s Obj. at 2.

24

Short of a comprehensive survey of the rates charged by most, if not all, IDEA attorneys in this area, the most persuasive evidence of the current market rate for IDEA services in this jurisdiction would be evidence of the actual rates charged by a representative sampling of attorneys engaged in such actions, as the plaintiff has provided.  Nonetheless, standing alone, the declarations offered by the plaintiff in this case leave some uncertainty as to which IDEA practitioners in this jurisdiction regularly *collect* fees comparable to those supplied by the USAO *Laffey* Matrix.  Most notably, while each of the declarants avers that he or she charges, or has charged, paying clients at *Laffey* rates, the declarants each fail to specify what proportion of their clients actually *pay* these rates.  *See, e.g.* Moran Decl. ¶ 9 (stating that "enhanced" *Laffey* rates "are regularly paid by clients who retain the [declarant's] firm to litigate cases on a non-contingency basis," but failing to indicate what portion of the firm's clients retain the firm under such an arrangement).  Further exacerbating this lingering uncertainty, the plaintiff elsewhere offers evidence that tends to suggest that few, if any, IDEA claimants are able to afford representation in connection with their administrative due process claim.  *See* Pl.'s Mem. at 7 (indicating that "the vast majority of special education attorneys are dependent upon the IDEA's fee-shifting statute for payment").  In this light, evidence of rates typically "charged" by IDEA attorneys provides relatively little insight into the rate these attorneys could command in a more traditional market for legal service.  *Accord Merrick*, 2015 WL 5732105 at *9 n.7 ("[G]iven the existence of the fee-shifting statute in [IDEA cases] and the relative rarity of paying special education clients, one can hardly say that a 'market' exists for services similar to the services offered in this case.").  Consequently, these declarations do not demonstrate conclusively the prevailing rates at which IDEA attorneys in this jurisdiction are actually paid for their services.

The plaintiff supplements this evidence, however, by pointing to recent fee awards in this District in which prevailing IDEA claimants were reimbursed at full *Laffey* rates.[5]   In reviewing this evidence, the Court is cognizant that such past fee awards present several drawbacks as evidence of the prevailing market rate for IDEA services.   Most notably, given the practical realities of fee litigation generally, as well as challenges associated with recovery from the District of attorneys' fees in IDEA litigation in particular, prior fee awards may fail to reflect the accurate prevailing market rate for IDEA practitioners in this jurisdiction.   Indeed, given that the vast majority of special education attorneys rely on fee-shifting to sustain their practice, these prior awards may *understate* prevailing market rates for special education attorneys for at least three reasons.

First, and most importantly, following an underlying merits proceeding, prevailing IDEA attorneys have a powerful incentive to minimize further litigation and obtain prompt payment for their services.   This motivation to avoid follow-on fee litigation may account for at least some of the below-*Laffey* IDEA fee awards that stem from fee applications seeking reimbursement at below-*Laffey* rates.   *Jones*, 2015 WL 9907797, at *9 & n.9.   In particular, recognizing that a request for reimbursement at an attorney's full *Laffey* rate is likely to provoke a challenge from the District, prevailing attorneys may request reimbursement at below-market rates in an effort to secure timely reimbursement and avoid further litigation.   *See Makray v. Perez*, No. CV 12-520 (BAH), 2016 WL 471271, at *12 (D.D.C. Feb. 8, 2016).   For this reason, "the reimbursement rates reflected in recent fee awards may not reflect the true market value of services rendered by prevailing civil rights attorneys because fee-shifting often occurs . . . after years of litigation over

---

[5]        The plaintiff identifies six Judges on this Court who have awarded *Laffey* rates in "various and similar matters," Pl.'s Mem. at 5, without complete citations to these cases.

substantive issues, and only after subsequent (and increasingly complex) fee litigation." *Id.* at *14; *see also* Pl.'s Mem. at 7–8 (explaining that, due to the typical reliance on fee-shifting, IDEA attorneys often do not receive compensation for their efforts for more than two years after taking on a case).

Much the same, many IDEA fee applications in this District, like the present application, are referred to Magistrate Judges, who are then responsible for recommending a proposed reimbursement rate and total fee award.  *See, e.g.*, *Gaston v. District of Columbia*, No. CV 14-1249 TSC/DAR, 2015 WL 5029328, at *7 (D.D.C. Aug. 26, 2015) *report and recommendation adopted*, No. 14-CV-1249 (TSC/DAR), 2015 WL 5332111 (D.D.C. Sept. 10, 2015); *Collins v. District of Columbia*, No. 15-CV-00136 (KBJ), 2015 WL 7720464, at *2 (D.D.C. Nov. 30, 2015).  Where a plaintiff's proposed reimbursement is contested, litigation before a magistrate judge generally entails substantive briefing by both parties, further delaying the point at which a prevailing attorney is compensated for his or her services.  Thereafter, though the recommended reimbursement rate may underestimate the actual prevailing rate for these services, plaintiffs who object to such a recommendation face the prospect of delaying reimbursement still further. Again, the overriding desire to hasten reimbursement, even at potentially below-market rates, may account for the many recommended IDEA fee awards based on below-*Laffey* rates that are adopted over no objection from the parties.

Even where a prevailing IDEA claimant endeavors to challenge a below-market reimbursement rate, decisions from this Court reflect divergent views on whether *Laffey* rates are reasonable in IDEA cases.  *See Reed*, 2015 WL 5692871, at *5; *see also Young v. District of Columbia,* 893 F. Supp. 2d 125, 130 (D.D.C. 2012) ("In this court, there has not been a unified

approach to the proper rates for attorneys' fees in IDEA cases, and there is authority that would support a range of approaches."). This general lack of uniformity in both approach and outcome provides, at best, a muddled view of the prevailing rate at which prevailing IDEA claimants receive reimbursement for their attorneys' efforts on their behalf. Confronted with this uncertainty, and this Circuit's still developing attorneys' fees jurisprudence, *see*, *e.g.*, *Salazar*, 809 F.3d at 64, prevailing IDEA claimants and their attorneys may understandably choose to accept immediate reimbursement at reduced rates in lieu of prolonged and unpredictable fee litigation.

Nonetheless, despite the muddle and the practical difficulties in relying on prior fee awards to identify a prevailing market rate, the D.C. Circuit has consistently held that evidence of such awards help inform the Court's attempt to identify a reasonable reimbursement rate in a particular case. *See*, *e.g.*, *Eley*, 793 F.3d at 101 (quoting Covington, 57 F.3d at 1109).[6] With this in mind, based on the plaintiff's asserted evidence, a review of recent IDEA fee awards indicates fairly broad support among Judges on this Court for reimbursement at or above full USAO *Laffey* rates, at least for "complex" IDEA administrative proceedings, consistent with the concurrence of Judge Kavanaugh in *Eley*.[7] As previously discussed, *supra* Part III.B.1., many of

---

[6]      While the D.C. Circuit has made clear that the parties may rely on prior fee awards to demonstrate the prevailing market rate for a particular category of legal services, the Circuit has provided comparatively little guidance to assist district courts in evaluating such evidence. For example, it remains unclear whether courts should seek to identify the reimbursement rate underlying the majority of recent *awards*, or instead consider what rate has been adopted by the majority of *Judges* in this jurisdiction. This distinction is particularly significant where, as here, a small number of Judges are responsible for a disproportionate share of recent fee awards.

[7]      *See Green v. District of Columbia*, 102 F. Supp. 3d 15, 23 (D.D.C. 2015) (Mehta, J.); *Salmeron v. District of Columbia*, 77 F. Supp. 3d 201, 210 (D.D.C. 2015), *vacated on other grounds*, 113 F. Supp. 3d 263 (D.D.C. 2015) (Walton, J.); Thomas v. District of Columbia, 908 F. Supp. 2d 233, 237 (D.D.C. 2012) (Howell, J.); A.S. v. District of Columbia,842 F. Supp. 2d 40, 48–49 (D.D.C. 2012) (Rothstein, J.); Young, 893 F. Supp. 2d at 131 (D.D.C. 2012) (Jackson, J.); Fisher v. Friendship Pub. Charter Sch., 880 F. Supp. 2d 149, 155 (D.D.C. 2012) (Lamberth, J.); Cox v. District of Columbia, 754 F. Supp. 2d 66, 75–76 (D.D.C. 2010) (Kessler, J.); Jackson, 696 F. Supp. 2d at 101–03 (Urbina, J.); Brown v. Jordan P.C.S., 539 F. Supp. 2d 436, 437–38 (D.D.C. 2008) (Leon, J.); Coleman v.

these decisions rely on the traditional distinction used in this jurisdiction between "complex" and "non-complex" IDEA cases, with cases presenting greater complexity warranting more generous reimbursement rates. The continued viability of this method of distinguishing among IDEA proceedings based on purported complexity in order to identify the appropriate reimbursement rate for prevailing IDEA attorneys is uncertain following the D.C. Circuit's recent *Eley* decision. *Id.* In any event, however, while far from a settled issue following *Eley*, the plaintiff's present request for reimbursement at her attorney's full *Laffey* rate finds some support in this Court's prior fee awards.

Lastly, the plaintiff suggests that the challenges associated with obtaining reasonable compensation renders IDEA cases sufficiently "undesirable" as to merit more generous reimbursement rates for successful IDEA claimants. Pl.'s Mem. at 6–10.[8] According to the plaintiff, while the "vast majority of IDEA cases in the District involve indigent minority parents of disabled children who are unable to advance costs for legal services[,] DCPS' routinely engages tactics which unreasonably complicate and protract litigation in IDEA cases." *Id.* at 7. Beyond general challenges associated with deferred payment through fee-shifting, the plaintiff asserts that the District "aggravates these circumstances by employing tactics aimed at deterring attorneys from litigating special education claims." *Id.* at 8. Most significantly, the plaintiff reports that the District routinely offers settlement agreements to IDEA claimants that offer some

---

District of Columbia, No. 03–cv–126 (HHK), 2007 WL 1307834, at *2–*4 (D.D.C. May 3, 2007) (Kennedy, J.); Kaseman v. District of Columbia, 329 F. Supp. 2d 20, 25–26 (D.D.C. 2004) (Huvelle, J.).

[8]      The plaintiff's argument on this front draws on the Fifth Circuit's enumeration of twelve factors that may be used by courts to identify an appropriate fee award in a particular case. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). As the D.C. Circuit has explained, given the current preference for calculating fee awards based on the lodestar method employed here, "[m]uch dispute has occurred, and some still exists, as to which, if any, of the[se] factors may be considered for purposes of multiplication rather than in the original lodestar computation." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1522 (D.C. Cir. 1988) (collecting cases).

portion of the plaintiff's requested relief in exchange for the waiver of all or nearly all attorneys' fees to which the plaintiff would otherwise be entitled.  *Id.* at 8–9.  For example, in the present case, the plaintiff reports that the District offered a settlement agreement that conditioned DCPS's evaluation of T.F. upon waiver of all but $1,500 in attorneys' fees and any right to additional compensatory education to which T.F. may be entitled.  *Id.* at 9.  The plaintiff's assertions on this front are echoed in two of the declarations she submitted in support of her present fee request.  *See* Nabors Decl. ¶ 6 (describing practices that, in the declarant's view, "have increased the cost of litigation and heightened the risk involved in litigating cases under the IDEA"); Moran Decl. ¶ 7 (same).  This evidence of the distinct challenges presented by the District's litigation tactics may be probative of an otherwise hidden burden on the vindication of the valuable rights provided under the IDEA, but the plaintiff offers no authority for the proposition that she may rely on such evidence to justify her request for reimbursement at full *Laffey* rates.

Even absent consideration of this last category of evidence, however, the plaintiff has presented two of the three types of evidence the D.C. Circuit has identified as probative of the prevailing rate for IDEA services in the District of Columbia.  In addition to her own attorney's description of her billing rates and practices, the plaintiff has provided both "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases;" and "evidence of recent fees awarded by courts or through settlement to attorneys with comparable qualifications handling similar cases.'"  *Eley*, 793 F.3d at 101 (internal quotations omitted) (quoting *Covington*, 57 F.3d at 1109).  Taken together, this evidence persuasively demonstrates both that IDEA practitioners in the District of Columbia

routinely seek reimbursement at full *Laffey* rates and that a majority of Judges on this Court have found such rates reasonable for at least some IDEA cases.

Accordingly, the plaintiff has met her burden of demonstrating that her requested reimbursement rate is in line with those prevailing in the District for services similar to those provided by her attorney in this case.  As such, the Court must presume that this hourly rate is reasonable, with the burden on the District to "provide specific contrary evidence tending to show that a lower rate would be appropriate."  *See Covington*, 57 F.3d at 1109–11. Consequently, to resolve the present motions, the Court must next consider the evidence offered by the District to rebut this presumption of reasonableness.

### 2.   *The District Fails to Rebut Evidence that the Plaintiff's Requested Rate is in Line with Prevailing Rates for Similar Services in this Jurisdiction*

Having concluded that the plaintiff has met her initial burden, and is therefore presumptively entitled to reimbursement at her requested rate, the Court next considers whether the District has presented sufficient evidence to demonstrate that reimbursement at the plaintiff's attorney's full *Laffey* rate would be unreasonable.  Arguing that reimbursement at no more than three-quarters of the plaintiff's attorney's *Laffey* rate is reasonable, the District relies heavily on prior fee awards in this District awarding prevailing IDEA claimants fees based on this reduced rate.  As discussed below, mindful of the inherent shortcomings of this evidence, particularly following *Eley*, the Court is not persuaded that the District has effectively rebutted the plaintiff's evidence of the actual prevailing rate for IDEA services in this jurisdiction.

Contending that the plaintiff's requested reimbursement rate is unreasonably high, the District argues principally that reimbursement at the plaintiff's attorney's *Laffey* rate is unwarranted due to the relative simplicity of the plaintiff's successful administrative due process

claim.  Thus, because this action—like many IDEA administrative actions—lacked certain features of traditional federal litigation, the District suggests that the "relevant legal market is that of administrative proceedings rather than complex federal litigation."  Def.'s Opp'n at 4; Def.'s Resp. at 4.  Moreover, the District argues that the plaintiff's present request in unreasonable because the *Laffey* Matrix "has been rejected in cases far more complex than the relatively simple IDEA administrative case at bar."  Def.'s Opp'n at 6.[9]  In support, the District cites a collection of recent fee awards in this jurisdiction in which successful IDEA claimants were reimbursed at three-quarters of their attorneys' full *Laffey* rates.  *Id.* at 8 & n.3, 12 & n.4 (collecting cases); *see also* Def.'s Resp. at 4–5 & n.3.[10]

At the outset, as previously noted, *supra* Part III.B.1., the District's effort to cast the underlying proceeding in this action as non-complex is generally misplaced following *Eley*. Moreover, even taken on its own terms, the District's reliance on pre-*Eley* fee awards is insufficient to overcome the plaintiff's own evidence of recent IDEA fee awards providing reimbursement at full *Laffey* rates to prevailing claimants.  Of the thirty-one cases cited by the District, twenty-eight were among the cases cited by the District to the D.C. Circuit in *Eley*. *Compare* Def.'s Opp'n Pl.'s Mot. Fees & Costs, *Eley v. District of Columbia*, No. 11-309

---

[9]     The District half-heartedly argues that payment of attorneys' fees is not *required* under the IDEA fee-shifting provision.  Def.'s Opp'n at 7; Def.'s Reply at 6.  As previously noted, however, *supra* Part II., "notwithstanding the apparently permissive language of the statute, the Supreme Court has interpreted similar language in other fee-shifting contexts to mean that the prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Price*, 792 F.3d at 114–15 (citing authorities).  The District puts forward no such "special circumstances" in this case, and the Court, in its discretion, finds no basis for declining to reimburse the plaintiff for the attorneys' fees she incurred in vindicating her child's civil rights.

[10]    The District's heavy reliance on this collection of recent fee awards is difficult to square with its assertion elsewhere that "'[a] blunderbuss array of cases specifically selected to support a low hourly rate does not assist the District Court in determining the prevailing community rate.'"  Def.'s Opp'n at 4 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1325).  Given that the District offers no additional evidence of the prevailing rate for IDEA services in this jurisdiction, the District's effort to minimize the significance of such prior awards appears largely self-defeating.

(BAH), at 12–13, nn.7–8 *with* Def.'s Opp'n at 8 n.3.  Of these twenty-eight decisions, eighteen involved a collection IDEA fee cases that were litigated simultaneously and resolved by a single Magistrate Judge in virtually identical opinions in 2012.[11]  Of the remaining ten cases, four involved plaintiffs who requested below-*Laffey* rates in their initial fee applications or raised no objection to a Magistrate Judge's R&R for reimbursement at that rate, with the six remaining cases decided by a Magistrate Judge or one of four District Judges on this Court who rejected the fee applicants' requests for full USAO *Laffey* rates due to lack of complexity.[12]

Beyond these twenty-eight cases, the new, post-*Ely* decisions cited by the District suggest only that IDEA claimants seeking reimbursement at full *Laffey* rates bear the burden of proffering sufficient evidence to show that such rates are reasonable.  First, in *Wilson v. District of Columbia*, 777 F. Supp. 2d 123, 127 (D.D.C. 2011), the district court declined to grant summary judgment in favor of a plaintiff whose request for reimbursement at a below-*Laffey* rate

---

[11]      *See Davis v. District of Columbia,* 864 F. Supp. 2d 110 (D.D.C. 2012); *Flores v. District of Columbia,* 858 F. Supp. 2d 95 (D.D.C. 2012); *Flores v. District of Columbia,* 857 F. Supp. 2d 15 (D.D.C. 2012); *Huntley v. District of Columbia,* 860 F. Supp. 2d 53 (D.D.C. 2012); *Huntley v. District of Columbia,* 859 F. Supp. 2d 25 (D.D.C. 2012); *Jones v. District of Columbia,* 859 F. Supp. 2d 149 (D.D.C 2012); *Petway v. District of Columbia,* 858 F. Supp. 2d 70 (D.D.C. 2012); *Sykes v. District of Columbia,* 870 F. Supp. 2d 86 (D.D.C. 2012); *Wallace v. District of Columbia,* 42 F. Supp. 3d 43 (D.D.C. 2012); *Wood v. District of Columbia,* 864 F. Supp. 2d 82 (D.D.C. 2012); *Young v. District of Columbia,* 869 F. Supp. 2d 1 (D.D.C. 2012); *Jones v. District of Columbia,* No. 11–cv–168 AK, 2012 WL 1664231 (D.D.C. May 11, 2012); *Scott v. District of Columbia,* No. 11–cv–165 AK, 2012 WL 1633207 (D.D.C. May 9, 2012); *Huntley v. District of Columbia,* No. 11–cv–157 AK, 2012 WL 1569553 (D.D.C. May 3, 2012); *Huntley v. District of Columbia,* No. 11–cv–164 AK, 2012 WL 1596724 (D.D.C. May 7, 2012); *Cousins v. District of Columbia,* No. 11–cv–172 AK, 2012 WL 1439033 (D.D.C. Apr. 26, 2012); *Crawford v. District of Columbia,* No. 11–cv–174 AK, 2012 WL 1438985 (D.D.C. Apr. 26, 2012)*; Gorman v. District of Columbia,* No. 11–cv–150 AK, 2012 WL 1438977 (D.D.C. Apr. 26, 2012).

[12]      *Johnson v. District of Columbia,* 850 F. Supp. 2d 74, 75 (D.D.C. 2012) (applicant requested below-*Laffey* rate); *Parks v. District of Columbia,* 895 F. Supp. 2d 124, 131–32 (D.D.C. 2012) (same);  *Carter v. District of Columbia,* 894 F. Supp. 2d 46, 53–54 (D.D.C. 2012) (below-*Laffey* rate adopted without objection); *Santamaria v. District of Columbia,* 875 F. Supp. 2d 12, 21 (D.D.C. 2012) (Contreras, J.); *McClam v. District of Columbia,* 808 F. Supp. 2d 184, 190 (D.D.C. 2011) (Collyer, J.); *Rooths v. District of Columbia,* 802 F. Supp. 2d 56 (D.D.C. 2011) (Friedman, J.); *Gray v. District of Columbia,* 779 F. Supp. 2d 68, 73 (D.D.C. 2011) (Kessler, J.); *Agapito v. District of Columbia,* 525 F. Supp. 2d 150, 155 (D.D.C. 2007) (Collyer, J.); *Moss v. District of Columbia,* No. 11–994 (JEB/JMF), 2012 WL 4510682, at *3 (D.D.C. July 12, 2012) (Facciola, M.J.); *Wright v. District of Columbia*, No. CIV.A. 11-0384 AK, 2012 WL 79015, at *3 (D.D.C. Jan. 11, 2012) (applicant request below-*Laffey* rate).

was supported only by evidence that her requested rate was less than the rate supplied by the *Laffey* Matrix. Similarly, in *A.C. ex rel. Clark v. District of Columbia*, 674 F. Supp. 2d 149, 155 (D.D.C. 2009), the court declined to award full *Laffey* rates where the plaintiff offered no evidence to support such an award beyond "merely indicat[ing] his years of experience as a lawyer and request[ing] that the trial court take judicial notice of his qualifications." The final case included among this collection involved adoption by a District Judge of an R&R recommending reimbursement at a reduced rate without objection from the plaintiff, who had unsuccessfully initially sought reimbursement at USAO *Laffey* rates before a Magistrate Judge. *Briggs v. Gov't of District of Columbia*, No. 14-CV-1254 (TSC), 2015 WL 1731511, at *1 (D.D.C. Apr. 2, 2015). On balance, this authority stands for the undisputed proposition that the failure to present sufficient evidence to demonstrate that a requested rate is reasonable, or to contest a recommended award based on a below-*Laffey* rate, precludes reimbursement at full *Laffey* rates.

Nonetheless, given the drawbacks of looking to prior fee awards to identify prevailing market rates, *supra* Part III.C.1., as well as evidence that the cases cited by the District reflect only a portion of recent IDEA fee awards in this jurisdiction, *id.*, the extent to which the Court may rely on the authority offered by the District in this case is unclear. Moreover, since nearly all of the prior fee awards in this District pre-date *Eley*, the Court's consideration of this prior authority must take into account the guideposts identified above, *supra* Part III.B. In particular, to the degree that prior fee awards rely to some degree on the distinction between "complex" IDEA cases, for which full *Laffey* rates apply, and "non-complex" IDEA cases, for which fee applicants are entitled only to three-quarters of the otherwise applicable *Laffey* rate, these

decisions appear to be inconsistent with the categorical approach recommended in *Eley*, *see supra* Part III.B.1.[13]  Instead, viewing IDEA cases as a class of litigation, there is ample support among the Judges on this Court, as well as at least one D.C. Circuit Judge, to conclude that prevailing claimants may obtain reimbursement at their attorneys' full *Laffey* rates upon an adequate showing that these rates are in line with the prevailing market rate for IDEA attorneys in the District of Columbia.  On balance, then, the evidence offered by the District on this front is alone insufficient to rebut the plaintiff's evidence of recent fee awards providing reimbursement at full *Laffey* rates for prevailing IDEA attorneys.

The District likewise fails to rebut the plaintiff's proffered evidence reflecting the actual rates charged by IDEA attorneys in this jurisdiction.  As explained above, this evidence tends to demonstrate that those attorneys who have offered declarations in this case typically request and receive reimbursement from this Court at full *Laffey* rates and, while maintaining relatively few fee-paying clients, charge and receive such fees from these clients.  The District offers no evidence of its own to refute these declarations.  Instead, the District argues that the plaintiff "has given no indication of a market rate, other than their [SIC] self-serving affidavits that essentially declare 'this is the market rate.'"  Def.'s Opp'n at 10.

The District has a point, and, in reviewing these declarations, the Court notes that evidence of this sort, particular where the declarants rely primarily on fee-shifting to support their own practices, presents drawbacks of its own.  Nonetheless, in identifying the evidence

---

[13]       Much the same, though the District points to prior instances in which the plaintiff's attorney herself received reimbursement at the reduced rate proposed by the District, Def.'s Opp'n at 8–9, these prior fee awards do not constrain the Court's analysis in this case.  As this Court has elsewhere explained, a particular attorney who—in a prior case requests or receives reimbursement at a particular rate—is not precluded from receiving a more generous rate in a later case.  *Makray*, 2016 WL 471271, at *12.  Indeed, there may be reason to believe that an attorneys' repeated success in a particular field ultimately warrants an increased reimbursement rate.  *Id.*

parties may submit to demonstrate prevailing market rates for a particular category of litigation, the D.C. Circuit has explicitly held that fee applicants may submit "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109).[14]

Here, the plaintiff has offered evidence from six declarants tending to demonstrate the rate at which comparably experienced attorneys are typically compensated for the services she received in connection with her successful administrative due process claim.  The plaintiff having done so, the District is required to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109–10 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326).  Since the District has declined to offer any affirmative evidence on this front, beyond a selective sampling of prior fee awards in this jurisdiction, the plaintiff's declarations represent the only evidence in the record reflecting the *actual* rates charged and collected in the relevant market.  To the extent that this evidence alone is inconclusive, the plaintiff has further supplemented these declarations with evidence of recent fee awards in this District that support her request for reimbursement at her attorney's full *Laffey* rates.  Absent positive evidence that the plaintiff's requested rate is unreasonably high, and that the reduction the District seeks would be appropriate in this case, the District's broad attack on the plaintiff's offered declarations does little to rebut the presumption that the plaintiff's requested reimbursement rate is reasonable.

---

[14]   In fact, consistent with the plaintiff's suggestion that such declarations provide the best evidence of the prevailing market rate for legal services similar to those for which a fee applicant seeks reimbursement, the D.C. Circuit appears to have "downplayed reliance on fee awards made in other cases as the measure of the . . . prevailing rate" for such services. *Makray*, 2016 WL 471271, at *14 (citing *Salazar*, 809 F.3d at 64 n.1).

Finally, the District argues for the first time in reply that it maintains a duty to closely examine IDEA fee applications and contest requests, like the plaintiff's request, that the District deems "wholly unreasonable."  Def.'s Reply Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. ("Def.'s Reply") at 5–6, ECF No. 16.  Citing prior efforts to process and pay IDEA fee applications without resort to litigation, the District contends that this earlier process "resulted in little success in avoiding litigation and excessive abuse."  *Id.* at 6.  As a result, the District suggests that "in an effort to protect public funds, DCPS, as guided by the IDEA and Court precedent, must exercise its own discretion in determining which activities are reasonable, necessary, and legally reimbursable."  *Id.*

The District's commitment to protect the public fisc is no doubt sincere, and the Court is mindful of the difficult policy judgments demanded of public officials seeking to balance the imminent needs of disabled children with the necessary restraints of limited resources. Nonetheless, the District's present protestations regarding its duty to contest all IDEA fee applicants seeking reimbursement at full *Laffey* rates is belied by the District's embrace, in another context, of automatic reimbursement for prevailing parties at even more generous rates. Indeed, although mentioned by neither party, the Court notes that the District of Columbia recently adopted the *Salazar*/LSI Matrix as a means of calculating recoverable attorneys' fees in actions to enforce various wage and hour laws.  *See* Wage Theft Prevention Amendment Act of 2014, 2014 District of Columbia Laws 20-157 (Act 20-426) § 2(f) (codified at D.C. Code § 32-1308(b)(1)).  In fact, automatic reimbursement at these more generous rates is available even for plaintiffs who, like the plaintiff in the instant case, prevail in administrative proceedings.  *Id.* § 2(h) (codified at D.C. Code § 32-1308.01(m)(1)).  Given the District's judgment that

reimbursement at *enhanced Laffey* rates is presumptively appropriate in administrative actions to vindicate an employee's right to legal compensation from their private employer, the Court sees no reason why attorneys who successfully demonstrate that the District itself has violated the rights of disabled children to a free and appropriate public education should be compensated at a rate *below* those proposed by the plaintiff.

\*                    \*                    \*

Confronted with the plaintiff's persuasive evidence demonstrating that her requested reimbursement rate is well in line with the prevailing market rate in this jurisdiction for the services she received in connection with her successful IDEA administrative due process claim, the District has failed to provide specific contrary evidence showing that its preferred, reduced rate reimbursement rate is appropriate.  Accordingly, the plaintiff's request for reimbursement at her attorney's full *Laffey* rate of $460 per hour for the 65.8 non-travel hours her attorney billed in connection with this matter is granted.  Over no objection from the plaintiff, three additional hours will be reimbursed at half of this hourly rate, reflecting travel time billed by the plaintiff's attorney.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiff's objection to the R&R is sustained, and both parties' motions for summary judgment are granted in part and denied in part.  Having prevailed in her effort to obtain a long-delayed evaluation of her child's eligibility for special education services under the IDEA, the plaintiff is entitled to reimbursement of attorneys' fees and litigation costs she incurred in pursuing her successful administrative due process claim. Further, because she has met her burden of justifying her requested reimbursement rate for the

hours her attorney reasonably expended in connection with this effort, the plaintiff is entitled to reimbursement for 65.8 hours of her attorney's time at an hourly rate of $460 and an additional three hours of her attorney's travel time at an hourly rate of $230.  As a result, in addition to the uncontested $710 in litigation costs, the District shall pay the defendant $30,958 in attorneys' fees, for a total award of $31,668.  An appropriate Order accompanies this Memorandum Opinion.


Date: March 25, 2016


_____
BERYL A. HOWELL
Chief Judge